HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST FARM CREDIT SERVICES, FLCA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IDS PROPERTY CASUALTY INSURANCE COMPANY,<br><br>　　　　Defendant. | CASE NO. C14-69RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendant IDS Property Casualty Insurance Company ("IDS") and a motion for partial summary judgment from Plaintiff Northwest Farm Credit Services, FLCA ("Northwest Farm"). IDS requested oral argument, Northwest Farm did not. The court finds oral argument unnecessary. For the reasons stated below, the court GRANTS IDS's motion for summary judgment (Dkt. # 7), DENIES Northwest Farm's motion (Dkt. # 9), DISMISSES this action, and directs the clerk to enter judgment for IDS.

## II. BACKGROUND

Northwest Farm lent money to Dr. Jonas and Kelly Hylton and secured the loan with a deed of trust to the Hyltons' residential property in Arlington, Washington. The deed of trust required the Hyltons to insure the property and to name Northwest Farm as a

ORDER – 1

loss payee or mortgagee on that policy. The Hyltons complied, obtaining a property insurance policy (the "Policy") from IDS. The Policy included a one-page Loss Payment Endorsement governing Northwest Farm's right to be reimbursed from any insurance payment.[1]

On January 19, 2012, a fire damaged the Hylton property. The Hyltons promptly notified IDS of the damage. There is no dispute that Northwest Farm was aware of the damage no later than January 23, 2012. Northwest Farm relied on the Hyltons' insurance claim; it did not file its own claim with IDS,[2] request that IDS notify it of determinations regarding the claim, or otherwise act to protect its interests as a loss payee.

So far as the record reveals, there was no communication between IDS and either the Hyltons or Northwest Farm until August 11, 2012, when IDS sent Northwest Farm a terse notice that the Hyltons had canceled the Policy effective July 25, 2012. Poor Decl. (Dkt. # 10), Ex. B. The Loss Payment Endorsement required IDS to notify Northwest Farm when IDS chose to cancel the Policy. LPE ¶ 4 ("[IDS] reserves the right to cancel the policy . . . , but in such case [IDS] shall mail to the secured party stating when such cancellation shall become effective as to the interest of the secured party."). No one suggests that the cancellation of the Policy was retroactive; the Policy was still potentially applicable to the fire damage. IDS had not, at that time, advised anyone of a determination on the Hyltons' claim.

---

[1] The version of the Policy in the record (Thenell Decl. (Dkt. # 8), Ex. 1) contains no declarations, and thus neither explicitly states that the Hyltons are the insureds nor that Northwest Farm is the "loss payee" (or equivalently, the "secured party") named in the Loss Payment Endorsement. The parties treat the Policy and the Loss Payment Endorsement as if they named the Hyltons and Northwest Farm, and the court follows their lead. When citing the Policy, the court relies on the page number at the center of the bottom of each page of the main policy, except that it cites the Loss Payment Endorsement separately, using the notation "LPE."

[2] Northwest Farm argues that its deed of trust to the Hylton property prohibited it from filing its own claim with IDS. That is incorrect. The deed of trust permitted Northwest Farm to file a claim in the event that the Hyltons did not; it does not prohibit claims in other circumstances. Compl. (Dkt. # 1), Ex. A (Deed of Trust, at Clause 5) ("Lender may make proof of loss if not made promptly by Borrower.").

ORDER – 2

Representatives of Northwest Farm and IDS spoke by telephone on October 3 and 4. IDS explained that it was continuing to investigate the Hyltons' claim, and that it had made no determination in part because it was awaiting additional documentation from the Hyltons. Poor Decl. (Dkt. # 10) ¶ 5 & Ex. C. Northwest Farm spoke with Dr. Hylton on October 4, who confirmed that he was dealing with IDS through an attorney, and that IDS continued to inform him that the claim was "under investigation." *Id.*, Ex. D.

On January 3, 2013, IDS issued a letter to the Hyltons' attorney denying their claim. IDS declared that the claim was not covered because the Hyltons were using the property as a rental, rather than their own residence, in violation of Policy terms. Compl. (Dkt. # 1), Ex. D. IDS did not notify Northwest Farm that it had denied the claim.

On January 14, 2013, Dr. Hylton called a Northwest Farm representative and explained that IDS had denied his claim because he did not use the property as his personal residence, and told Northwest Farm that he believed that the "statute of limitations" would run out "tomorrow." Poor Decl. (Dkt. # 10) ¶ 4 & Ex. E. The Northwest Farm representative noted that Dr. Hylton requested assistance from Northwest Farm "ASAP." *Id.*, Ex. E.

Northwest Farm did not obtain a copy of either the Policy or IDS's January 2013 denial letter until November 2013. Poor Decl. (Dkt. # 10) ¶ 7. On December 5, 2013, it filed a proof of loss with IDS. Compl. (Dkt. # 1), Ex. E. IDS denied that claim six days later in a letter citing the Policy's one-year suit limitation clause. *Id.*, Ex. F. That clause provides as follows:

> We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs.

Policy at 8. IDS's letter to Northwest Farm also cited the Loss Payable Endorsement. Compl. (Dkt. # 1), Ex. F.

Northwest Farm filed this suit on January 14, 2014. It raised three claims: that IDS had breached the Policy, that Northwest Farm was entitled to declaratory judgment

ORDER – 3

that the Policy covered the loss, and that Northwest Farm was entitled to equitable relief excusing its untimely claim and suit.

The parties then filed these summary judgment motions, which take the opposite viewpoint on the impact of the suit limitation clause. Northwest Farm concedes, as it must, that it sued more than one year after the fire. It contends, nevertheless, that IDS's misdeeds permit the court to ignore the suit limitation clause, or at least to invoke equity to excuse Northwest Farm's untimely suit. IDS contends that the suit is untimely as a matter of law and that the court must dismiss it.

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

Some of the issues the parties raise require the court to interpret the Policy. In Washington, insurance policy interpretation is a legal question. *Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002) ("Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect."). The court must give the terms of the policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing

ORDER – 4

insurance." *Id.* (internal quotation omitted). Terms defined within a policy are to be construed as defined, while undefined terms are given their "ordinary and common meaning, not their technical, legal meaning." *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1246 (Wash. 1997). Dictionaries may assist in determining the ordinary meaning of a term. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990). If policy language on its face is fairly susceptible to two different but reasonable interpretations, ambiguity exists. *Peasley*, 932 P.2d at 1246 (cited in *Petersen-Gonzales v. Garcia*, 86 P.3d 210 (Wash. Ct. App. 2004)); *Allstate Ins. Co. v. Hammonds*, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (ambiguity exists "when, reading the contract as a whole, two reasonable and fair interpretations are possible."). Extrinsic evidence may provide the meaning of an ambiguous term, but only where that evidence shows that both parties to the policy intended a particular meaning. *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998); *see also Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) ("If a clause is ambiguous, [a court] may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity."). Because parties rarely negotiate the terms of an insurance policy, there is rarely evidence of the parties' mutual intent as to the meaning of a policy term. Where extrinsic evidence does not resolve an ambiguity, the court must construe the ambiguous term in favor of the insured. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 141 (Wash. 2000); *see also Hammonds*, 865 P.2d at 562 (directing courts to resolve ambiguity against insurer "even where the insurer may have intended another meaning").

**A.   The One-Year Suit Limitation Clause Applies to Northwest Farm, and Northwest Farm Did Not Sue Within One Year.**

The court begins its Policy interpretation at the suit limitation clause, which is unambiguous. It requires a suit "within one year after the loss or damage occurs." No one disputes that the "loss or damage" in this case occurred on January 19, 2012.

ORDER – 5

The Loss Payable Endorsement makes the suit limitation clause applicable to Northwest Farm:

> If the insured fails to render proof of loss within the time granted in the policy conditions, such secured party shall do so within (60) days after having knowledge of the loss, in form and manner as provided by the policy, and, *further, shall be subject to the provision of the policy relating to appraisal and the time of payment and bringing suit*.

LPE ¶ 5 (emphasis added). That too is unambiguous.

Northwest Farm attempts to introduce ambiguity into the suit limitation clause and its applicability to Northwest Farm by citing another portion of the Loss Payable Endorsement stating as follows:

> This insurance as to the interest of the secured party shall not be invalidated by any act or neglect of the insured named in said policy or his agents, employees, or representatives, nor by any change in the title or ownership of the insured property . . . .

LPE ¶ 2. Even if that clause could be interpreted to excuse a secured party's compliance with the suit limitation clause, it would do so only when the "act or neglect of the insured" caused the secured party's interest to be invalidated. In this case, the Hyltons did nothing to invalidate Northwest Farm's interest. They timely filed their claim. They kept Northwest Farm apprised of the IDS investigation, and they notified Northwest Farm within no more than 11 days of the denial of their claim. Nothing the Hyltons did prevented Northwest Farm from filing suit.

The court concludes that the suit limitation clause unambiguously applies to Northwest Farm via the Loss Payment Endorsement, and that Northwest Farm did not sue within one year of the damage to the Hylton property.

**B. Nothing Excuses Northwest Farm's Failure to Comply with the Suit Limitation Clause.**

Washington courts enforce unambiguous suit limitation clauses. *E.g.*, *Panorama Vill. Condo. Owners Ass'n v. Allstate Ins. Co.*, 26 P.3d 910, 914-915 (Wash. 2001); *Simms v. Allstate Ins. Co.*, 621 P.2d 155, 156 (Wash. Ct. App. 1980); *Ashburn v. Safeco Ins. Co.*, 713 P.2d 742, 743-44 (Wash. Ct. App. 1986) (citing cases); *Wothers v. Farmers*

*Ins. Co.*, 5 P.3d 719, 721 & n.2 (Wash. Ct. App. 2000). Northwest Farm contends that its delay in suing did not prejudice IDS. It cites no authority, however, that an insurer must suffer prejudice before enforcing a suit limitation clause, and the court is aware of none.

As this court has explained in a previous case, Washington courts have applied the doctrine of equitable estoppel to excuse strict compliance with suit limitation clauses. *F.C. Bloxom Co. v. Fireman's Fund Ins. Co.*, No. C10-1603RAJ, 2012 U.S. Dist. LEXIS 55228, at *14 (W.D. Wash. Apr. 19, 2012). Equitable estoppel, in this context, applies when an insurer's acts or representations cause another party to refrain from taking a necessary action, in which case the insurer cannot benefit from the other party's failure to act. *Id.* at *15 (citing *Dickson v. United States Fidelity & Guaranty Co.*, 466 P.2d 515, 516 (Wash. 1970) and *Logan v. North-West Ins. Co.*, 724 P.2d 1059, 1062 (Wash. Ct. App. 1986)). This court also acknowledged the possibility that equitable tolling might apply to a contractual limitation period. *Bloxom*, 2012 U.S. Dist. LEXIS 55228, at *17-18. That doctrine typically requires bad faith, deception, or other false assurances from one party to the contract that prevent the plaintiff from complying with a limitation period despite its diligence. *See Reed v. Allstate Ins. Co.*, No. C11-866JLR, 2012 U.S. Dist. LEXIS 19402, at *17-18 (W.D. Wash. Feb. 16, 2012) (citing *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998)).

In this case, Northwest Farm's claim for equitable relief falters because of its lack of diligence and because IDS had no role in inducing Northwest Farm to sit on its rights. Northwest Farm strains to place the blame for its untimely suit on IDS, claiming among other things that IDS wrongly failed to notify it directly of its denial of the Hylton claim and that IDS took too long investigating the Hylton claim. None of those accusations, however, overcome the simple fact that Northwest Farm knew no later than January 14, 2013 that IDS had denied the Hyltons' claim, and that Northwest Farm nonetheless did not sue for another year. Northwest Farm knew about the fire damage and the pending insurance claim in January 2012, yet it did not file its own claim, examine the Hyltons'

ORDER – 7

claim, or attempt to obtain a copy of the Policy (which had by then been in effect for nearly four years.)  When Northwest Farm first knew that IDS had denied the claim, it still had five days to file an unquestionably timely suit.  That is not much time, to be sure, but it is time enough.  Northwest Farm's complaint in this case was just six pages long, and although Northwest Farm did not have complete documentation of the basis of its suit (in part because it had done nothing to obtain documentation), it knew all of the essential facts.  Even after those five days had passed, the court might inquire more deeply into Northwest Farm's plea for equitable relief if the evidence showed that it had acted diligently.  *See Bloxom*, 2012 U.S. Dist. LEXIS 55228, at *15-16 (citing *Dickson*, 466 P.2d at 517 and *David v. Oakland Home Ins. Co.*, 39 P. 443 (Wash. 1895) for proposition that insured has a "reasonable time" after it is notified of final denial of claim to sue).  Instead, Northwest Farm waited another year.  There is no evidence that it attempted to negotiate with IDS for an extension of the limitation period.  There is no evidence that it acted reasonably promptly to obtain required documentation, and it did not obtain the Policy or the IDS denial letter to the Hyltons until November 2013.  There is no evidence, moreover, that IDS did anything, beginning when Northwest Farm learned that it had denied the Hylton claim, to induce Northwest Farm to sit back while its right to sue lapsed.  Northwest Farm could have timely sued; even if it had not, a delay of one year after learning of the claim denial was unreasonable.

       The preceding conclusions (that the one-year suit limitation clause unambiguously applies to Northwest Farm and that equity does not excuse Northwest Farm's failure to comply with that clause) are a sufficient basis to grant summary judgment to IDS.  The court nonetheless addresses a few of Northwest Farm's additional contentions.

       First, Northwest Farm cannot take refuge in a Washington insurance regulation that requires an insurer to notify its insured of the expiration of a suit-limitation clause within 30 days (for a first-party insured) or within 60 days (for a third-party insured).  Wash. Admin. Code § 284-30-380(5).  First, it is not clear that the regulation applies to

ORDER – 8

1 Northwest Farm, who is not an insured.  Second, the regulation applies only to claimants
2 not represented by counsel.  The Hyltons had counsel, and Northwest Farm does not
3 contend that it was unrepresented.

Second, Northwest Farm's effort to saddle IDS with the duties an insurer owes to its insured ignore that Northwest Farm is not IDS's insured.  Northwest Farm agreed to have its interest in the Hylton Property protected by a policy that did not make it an insured and placed very few obligations on IDS.  IDS was not required to notify Northwest Farm of anything except when it decided to cancel a policy.  If Northwest Farm wanted more protection, it should have required the Hyltons to obtain a policy that provided it more protection.  The deed of trust permitted Northwest Farm to do so. Compl. (Dkt. # 1), Ex. 1 (Deed of Trust ¶ 5) ("The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove the Borrower's choice, which right shall not be exercised unreasonably.").  The court rejects the contention that the Loss Payment Endorsement carried an implied duty to provide more notice to Northwest Farm.

Third, the court finds no merit in Northwest Farm's contention that it suffered prejudice because of this sentence in IDS's denial letter to the Hyltons:  "This letter is written to provide you [the Hyltons' attorney] with the reasons for denying your clients' insurance claim and is not intended for publication to others."  Compl. (Dkt. # 1), Ex. D. Northwest Farm states, incorrectly, that the sentence prohibited the Hyltons (or anyone else) from informing Northwest Farm about the claim denial.  Even if Northwest Farm's interpretation of the sentence were accurate, there is no dispute that Dr. Hylton ignored that "prohibition" by informing Northwest Farm of the denial in no more than 11 days.

Fourth, Northwest Farm does not persuade the court with its assertion that IDS's denial of the Hylton claim was a "de facto cancellation" of the Policy that required IDS to notify Northwest Farm.  To deny a claim is not to cancel an insurance policy – the policy continues to cover any claim within its scope.  Even if that were not the case, IDS would

ORDER – 9

have notified Northwest Farm no more than 11 days sooner than Dr. Hylton did.  As the record conclusively reveals, that would have made no difference.

### IV.  CONCLUSION

For the reasons stated above, the court GRANTS IDS's motion for summary judgment (Dkt. # 19), DENIES Plaintiff's motion (Dkt. # 9), DISMISSES this action, and directs the clerk to enter judgment for IDS.  The court notes that it considered IDS's request in a surreply to strike arguments that Northwest Farm raised for the first time in its reply brief.  Although Northwest Farm raised several arguments for the first time on reply, the court has considered them despite IDS's motion to strike because that consideration does not prejudice IDS.

DATED this 23rd day of July, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 10